*In re* RAND, Commissioner of United States Circuit Court.

(*Circuit Court, D. Maine.* September Term, 1883.)

UNITED STATES CIRCUIT COURT COMMISSIONER — FEES FOR KEEPING DOCKET — REFUSAL TO EXHIBIT SAME FOR INSPECTION UPON DISALLOWANCE OF FEES FOR KEEPING.

The order of the circuit court of the United States to commissioners in the first judicial circuit, providing for the keeping of a docket by each com-

missioner of that court, nowhere imposes upon a commissioner the duty of exhibiting his docket for inspection by the agent of the department of justice; and, in lieu of any specific provision for fees to the commissioner for keeping such docket, he is not bound to allow such inspection, his fees for keeping the docket having been disallowed by the comptroller of the treasury. The files of the original documents kept by the commissioner, with his *memoranda* upon them, together with the quarterly accounts and reports which he is bound by law to make to the court, are sufficient checks upon his conduct, and afford all the necessary evidence of the correctness of his accounts.

*The Attorney General,* by motion for an order to Edward M. Rand, a commissioner of United States circuit court.

Before LOWELL and WEBB, JJ.

WEBB, J. The attorney general has transmitted to this court copies of the correspondence between himself and the first comptroller of the treasury, relating to an alleged refusal by Edward M. Rand, Esq., one of the commissioners of the circuit court in the district of Maine, to exhibit his *records* as commissioner to the inspection of authorized agents of the department of justice, and by the district attorney has requested the court to order the commissioner to expose his records to examination whenever so required by authorized persons. Notice of this motion was given to the commissioner, and at the present term of the circuit court a full hearing of the case has been had. It appeared on the hearing that in January, 1882, the circuit court, in consequence of a suggestion from the attorney general, promulgated the following order to commissioners in the first judicial circuit:

*"Circuit Court of the United States, District of Maine.*

"ORDER OF COURT, JANUARY 11, 1882.

"(1) Each commissioner of this court, acting in criminal cases, shall keep a docket, in which he shall enter all applications for warrants granted by him, stating briefly the nature of the offense, the name of the complainant, the date of issuing of the warrant, and all subsequent proceedings thereunder; also the names of witnesses present and examined. At the foot of the docket in each case the commissioner shall enter a statement of all fees and expenses accruing in the case, including his own fees.

"(2) No warrant shall be issued by a commissionnr for the arrest of a person charged with having violated any of the laws of the United States, upon the complaint of any person, unless a collector of customs, or of internal revenue, or a deputy collector, or a treasury, revenue, or postal agent, or the district attorney for this district, or one of his assistants, shall have certified as to such complaint that in his opinion it is such an offense as should be prosecuted, and shall have requested that a warrant for the arrest of the accused be issued.

"(3) After the final disposition of each case before him, the commissioners shall forward to the clerk of the court of the United States for this district, having cognizance of the offense charged, copies of all the papers, together with all recognizances taken by him in the case, with a proper transcript of the proceedings, in which he shall schedule the papers forwarded, and to which he shall add a statement of all the fees accruing in the case, including his own fees.

"(4) At the end of each *quarter,* or within ten days thereafter, each commissioner shall make out and deliver, or cause to be delivered, to the clerk of

this court, a report in duplicate of all cases brought before him and disposed of during the quarter,—one to be retained by the clerk, and the other to be forwarded by him to the attorney general; and a separate report of internal revenue cases so brought, to be forwarded by the clerk to the commissioner of internal revenue. These reports shall be made upon such forms as shall be prescribed and furnished by the department of justice.

"(5) Sections 3 and 4 of this order are conditional, upon suitable provision being made for compensation to commissioners for performing the services therein required of them.

"(6) The clerk of this court is instructed to furnish each of the commissioners for this district with a copy of this order, to distribute such blanks for commissioners as may be sent to him by the department of justice, and to forward to the attorney general, and to the commissioner of internal revenue, the reports delivered to him for these officers, under the fourth section of this order.

"By the Court. ;

[L. S.] "A. H. DAVIS, Clerk."

This order, in some particulars, differed from the form recommended by the attorney general, but it was believed to secure all the beneficial objects aimed at, while it simplified and reduced the labor imposed on commissioners. Mr. Rand, upon the promulgation of this order, provided a suitable docket, in which he made all the entries required to be made, and in all other respects complied with its terms. The quarterly returns, made in triplicate in internal revenue cases, and in all other cases in duplicate, of which one copy was to be forwarded by the clerk to the atttorney general, contain all the facts which, under the order, should appear on the docket of the commissioner. These returns Mr. Rand has regularly made, in strict compliance with the directions of this court, and to us they appear to furnish all the *data* necessary for the examination and supervision of his accounts. Indeed, if the commissioner had provided a book ruled and headed exactly like the forms for these returns furnished from the department of justice, and had therein entered precisely what he has returned in his quarterly reports, this court could not, under its above order, censure him for not keeping the docket.

In the first account rendered by Mr. Rand, after the passage of the foregoing order to commissioners, he made charges for keeping a docket in each case; the charge being one, two, or three dollars, depending on the proceedings in the respective cases. These charges he justified under the fee-bill allowances to clerks, and the provision that, for services not specially enumerated, commissioners should have the same compensation allowed to clerks for like services. The fees thus charged were disallowed by the first comptroller. But Mr. Rand, feeling confident that they were legal and proper, in his next account included similar charges, and brought forward the amount of the disallowed items of the preceding account. These charges were again disallowed, and correspondence between the commissioner and comptroller followed, the commissioner protesting against the

ruling that held his charges improper, and urging for a personal examination of the question by the comptroller. Again in his accounts Mr. Rand repeated charges for keeping his docket, and brought forward the amounts previously disallowed. The comptroller finally disposed of the questions thus raised by an opinion dated July 6, 1883, and printed in the Internal Revenue Record of July 16, 1883, which opinion reaffirmed the previous rulings and disallowances. About the same time Mr. Rand was notified that the items for keeping docket were "*disallowed, not suspended, and were not to be recharged.*"

In compliance with the act entitled "An act regulating fees and costs, and for other purposes," approved February 22, 1875, (18 St. at Large, 333,) Mr. Rand had forwarded all these accounts, as they were severally made out, to the district attorney for the district of Maine, by whom they were submitted for approval in open court, and the court passed upon the same, and in each instance caused to be entered of record an order approving the same. The court, after considering the opinion of the comptroller with the care and attention due the opinion of that high officer, is still convinced that the approval of the accounts was correct. In his opinion the comptroller lays stress on the fact that the fee bill gives clerks compensation for keeping "*dockets*, not a docket," and proceeds to mention various kinds of dockets that are known in the clerk's office of some states. This argument on the use of the plural number, instead of the singular, in the statute regulating fees, seems to overlook the provision of chapter 1, § 1, Rev. St., that "words importing the singular number may extend and be applied to several persons or things; words importing the plural number may include the singular."

In actual practice only one docket has ever been kept by the clerks of the federal or state courts in this circuit, and upon that, under each case, are entered all the *memoranda* relating to it. Subsequently to the final ruling of the comptroller, and the notice to Mr. Rand that his charges had been "disallowed, not suspended, and were not to be recharged," agents from the department of justice called upon Mr. Rand, and demanded to see his "*docket,*" not his "*records.*" He declined to exhibit it, claiming that as he was not allowed anything for keeping it, he was under no obligations to show it, and that it was his private property. But he at the same time declared his readiness to obey any order of the court of which he is an officer. At the hearing, upon the motion of the district attorney, he defended his action, contending that the ruling of the comptroller was erroneous, and based on mistake of facts and of law, and he appealed to the court to relieve him from the performance of duties nowhere imposed on him by statute, and for which he is denied compensation.

The facts, conclusively shown, make it manifest that the action of Mr. Rand in withholding his docket from the inspection of Messrs. Cameron and Haight, the agents from the department of justice,

whether proper or not, was in no sense in defiance of duty, or actuated by a contemptuous spirit, but was an honest and open assertion of what he believed to be his right.

Was his action correct? The order of court, in obedience to which the docket is kept, is silent in respect to the use to be made of it. The present circuit judge, after consultation with District Judge Fox, since deceased, promulgated the order, which, though a modification of the order proposed by the attorney general, does not differ from that in omitting to provide for the inspection of the docket. At the time of passing this order the matter of inspection was not thought of, but it was believed that for keeping this book the commissioner would be paid under the provision giving him the same compensation as is allowed to clerks for like services. Consequently this duty was not, like other duties imposed by the same order, made "conditional upon suitable provision for compensation to commissioners for performing the services so required of them." Order, par. 5.

The court is now called upon to order the commissioner to exhibit his docket whenever so requested by duly-authorized persons from the department of justice. On the other hand, a commissioner of this court of many years' standing, and whose official conduct is now for the first time unfavorably criticised, protests that such an order would be unjust and oppressive to him, and claims that he is entitled to the protection of the court against the demand. It is thus not a question of the respect due from the court to the officers of the department of justice, but one of strict right and law. It would be a reproach to the court to dispose of this question by an arbitrary exercise of power ordering the commissioner to submit or be dismissed.

Very soon after the organization of the government provision was made for the appointment of commissioners to take bail in civil cases, but no federal officers were authorized to arrest, examine, and bail persons charged with crimes against the United States. Those matters were intrusted to the justices of the peace and certain other magistrates of the several states. By the act of August 23, 1842, it was provided that commissioners appointed by the circuit court of the United States to take acknowledgment of bail, etc., "shall and may exercise all the powers that any justice of the peace, or any other magistrate of any of the United States, may now exercise in respect to offenders for any crime or offense against the United States, by arresting, imprisoning, or bailing the same, under and by virtue of the thirty-third section of the act of the twenty-fourth of September, A. D. 1789, entitled 'An act to establish the judicial courts of the United States.'"

The act, thus giving powers to commissioners, contains no rule in regard to their compensation for services rendered in the exercise of those powers. The act of 1789, referred to, simply says that the proceedings by justices of the peace, or other magistrates, shall be "at the expense of the United States." Neither do we find any act de-

fining and prescribing the general duties of commissioners. Some special duties have been imposed, as under the act for the return of fugitives, and under the act to enforce the right to vote.

In 1853 (chapter 80) the_fee bill, for the first time that we have been able to discover, undertook to prescribe the compensation of these officers, but instead of specifying in detail all the services they might, under their general powers, be called upon to perform, and attaching to each its appropriate fee, it particularly enumerates only a few, and disposes of the greater number by giving "the same compensation as is allowed to clerks for like services."

It clearly is not contemplated that these officers, having no fixed compensation, shall be compelled to perform labor for the public benefit without pay. That they should be held to keep, and at proper times produce, adequate evidence that they have performed all the services for which in their accounts against the United States they claim and are allowed compensation, is equally clear; and it may be that the form of presenting such evidence is a proper subject for the direction of the court. But, in the absence of any statutory regulation, we do not think that the method of preserving and presenting such evidence can reasonably be made to involve a large amount of work without compensation. The original documents retained on the files of the commissioner, with simple and easily-made *memoranda* upon them, would afford all the necessary evidence of the correctness of his accounts. In the cases where the respondents are held to answer to the complaint, the copies transmitted to the court, and remaining in the clerk's office with other papers relating to the cases, also show what has been done. A docket kept with considerable trouble cannot guard against improper charges. If any commissioner should be dishonest enough to make charges without rendering service, it would be very easy for him to keep his docket to agree with his accounts. Against items in their nature not allowable, a docket would be no safeguard.

It is not, therefore, considered that the docket contemplated in the order of court is necessary as a voucher for the commissioner's accounts. The fact that it is kept in the commissioner's possession, instead of accompanying the accounts as often as they are forwarded to the department, is conclusive that it is not essential for the determination of the propriety and accuracy of the charges. The particularity of the quarterly returns, of which duplicates remain in the clerk's office, and to which attention has been called at the hearing of this case, further satisfies us that the docket is not needed as a check on the examination of the commissioner's accounts. Commissioners of this court have been selected with much care from the members of a learned and honorable profession, whose personal and professional reputation and character are generally well known to the judges making the appointments. They are sworn to the faithful performance of their duties. They verify their accounts by their

oaths, as required by statute. They are subject to all penalties denounced against fraudulent claims on the United States. Their compensation is derived from small allowances for the several acts they officially perform. They have no salary or general allowance to recompense them for services of a general character. And, in view of the law and the facts of this particular case, we do not feel justified in ordering the commissioner, against his protest, to show the docket he has kept under the direction of the court, and for which he is denied pay. If he were properly paid for it, then the court would hold that its production, as often as called for by proper authority, would be necessary, as the evidence that his charges for keeping it were correct. And if it be made hereafter to appear that for the labor and service imposed on them by any order of the court the commissioners are not allowed such compensation as they are reasonably entitled to, the court, on their request, would feel constrained, by modification of its order, to afford them relief.

Motion denied.